IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY D. BROWN, JR., | ) | CASE NO.  1:18-CV-02925-JG |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES GWIN |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN CHAE HARRIS, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Stanley D. Brown, Jr. ("Brown" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Brown is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Brown*, Richland County Court of Common Pleas Case No. 2016 CR 0698.  For the following reasons, the undersigned recommends that the Petition be DISMISSED IN PART AND DENIED IN PART.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Brown's conviction as follows:

{¶ 5} On Saturday, January 3, 2015, Amir Evans invited fifteen (15) year old J.J. to a party at the Rodeway Inn at 880 Laver Road, Mansfield, Ohio. (T. at 217–219). Evans had Trae Coopwood pick J.J. up and take her to the Rodeway Inn. (T. at 219).

{¶ 6} After being dropped off at the Rodeway Inn by Coopwood, J.J. met up with Evans, who rented two (2) rooms. (T. at 220, 224). J.J., Evans, Jermaine Hughes (hereinafter "Co–Defendant Hughes") and four (4) to five (5) other people went into the first room and began partying. (T. at 221–223). During the party in the first room, J.J. consumed alcohol, Marijuana, and psychedelic mushrooms. (T. at 221, 222, 267, 268).

{¶ 7} Approximately ninety (90) minutes after the party began, Appellant Stanley Brown, Jr., Eyrihk Murphy (hereinafter "Co–Defendant Murphy") and several other people arrived at the Rodeway Inn and began partying with J.J., Evans and Co–Defendant Hughes. (T. at 222, 223).

{¶ 8} Approximately two (2) hours after J.J. arrived at Rodeway Inn, Appellant Brown, Co–Defendant Hughes, Co–Defendant Murphy, J.J., Evans, and several other people moved from the first room into the second room rented by Evans. (T. at 224, 225). Evans then left the second room, returning to the first room and leaving J.J. alone with Appellant Brown, Co–Defendant Hughes, and Co–Defendant Murphy. While in the second room, J.J. participated in a drinking game with Southern Comfort and Patron tequila. (T. at 226). As a result of her high level of intoxication, J.J. lost consciousness. (T. at 228).

{¶ 9} Upon regaining consciousness, J.J. discovered Co–Defendant Hughes vaginally penetrating her without her consent. (T. at 229). Appellant Brown was encouraging Co–Defendant Hughes as he vaginally raped J.J. and told J.J. to relax. (T. at 230–233). In addition to encouraging Co–Defendant Hughes, Appellant Brown, who was sitting on the bed directly next to J.J.'s head throughout the rape, pushed J.J. down by her shoulder when she tried to get up from the bed. (T. at 229–231, 470–472). Appellant also shoved his penis in J.J.'s face and attempted to force J.J. to perform oral sex on him. (T. at 232, 233, 470–472).

{¶ 10} While the rape was occurring, Evans attempted to regain entry into the second room two (2) different times. (T. at 595–599). However, the occupants locked the door and ignored Evans knocking on the door. *Id.* Following the rape, J.J. returned to the first room, confronted Evans, and told him what Appellant Brown, Co–Defendant Hughes, and Co–Defendant Murphy had done to her. (T. at 236, 237, 600, 601). However, neither J.J. nor Evans contacted the police, as they were afraid they would get in trouble due to their underage drinking and drug use. (T. at 616, 617).

{¶ 11} After returning home from Rodeway Inn on Sunday, January 4, 2015, J.J. neither showered nor changed her clothes from the night before. (T. at 239). Instead, she ran errands with her mother and hoped that the events of January 3, 2015 would remain a secret. *Id.* However, when J.J. went to school on Monday, January 5, 2015, several of her friends made contact with her regarding what happened on January 3, 2015 at the Rodeway Inn. (T. at 239, 240).

{¶ 12} Late in the evening on January 5, 2015, J.J. had a friend take her to OhioHealth Mansfield for a SANE exam, as she was still too embarrassed to tell her mother what happened at Rodeway Inn on January 3, 2015. (T. at 240, 241). During the SANE exam, J.J. advised SANE nurse Tammy Robertson of the events of January 3, 2015, and identified Appellant Brown and Co–Defendant Hughes as two (2) of her attackers. (T. at 329, 330). Ms. Robertson completed a rape kit and collected anal and vaginal swabs, pubic hair, and fingernail clippings from J.J. (T. at 325–329). Ms. Robertson also made contact with Richland County Sheriff's Office and J.J.'s mother in order to collect J.J.'s clothes from January 3, 2015. (T. at 331, 332). Richland County Sheriff's Deputy Broom collected J.J.'s rape kit and clothing from January 3, 2015, and submitted them to Bureau of Criminal Investigation (hereinafter "BCI"). (T. at 578–583).

{¶ 13} On January 8, 2015, Richland County Sheriff's Deputy Dittrich interviewed J.J., who provided a statement regarding the rape at Rodeway Inn on January 3, 2015, and identified Appellant Brown, Co–Defendant Hughes and Co–Defendant Murphy as her attackers. (T. at 507–511). Deputy Dittrich then made contact with Evans and obtained his statement regarding the events of January 3, 2015. (T. at 509). Following her interviews with J.J. and Evans, Deputy Dittrich obtained search warrants for DNA swabs from Appellant Brown, Co–Defendant Hughes, Co–Defendant Murphy and several other guests who were at the party at Rodeway Inn on January 3, 2015. (T. at 511–513). Deputy Dittrich submitted those DNA swabs to BCI for comparison to the swabs taken from J.J.'s person and J.J.'s clothing. *Id.*

{¶ 14} Lindsey Pruneski and Jennifer Colecchia, two (2) forensic scientists at BCI, analyzed and compared the various DNA swabs. (T. at 410–430; 440–483). Ms. Colecchia identified Appellant Brown as the source of both sperm and non-sperm DNA on J.J.'s shirt from January 3, 2015, with a reasonable degree of scientific certainty. (T. at 470–472). Ms. Colecchia also identified Co–Defendant Hughes as the source of sperm DNA recovered from J.J.'s vagina with a reasonable degree of scientific certainty. (T. at 459).

{¶ 15} Approximately one (1) week after the rape, Appellant Brown made contact with J.J. via Snapchat and asked J.J. if she had called the police. (T. at 243, 244). J.J. never responded to Appellant's message. (T. at 244).

3

{¶ 16} On August 11, 2015, a Richland County Grand Jury indicted Appellant Stanley D. Brown, Jr. on one count of Aiding or Abetting Rape, pursuant to R.C. § 2907.02(A)(1)(C) and (A)(2), one count of Aiding or Abetting Rape, pursuant to R.C. § 2923.03(A)(2), and one count of Kidnapping, pursuant to R.C. § 2905.01(A)(4). All charges were first-degree felonies.

{¶ 17} Appellant entered pleas of not guilty to the charges.

{¶ 18} On April 12, 2016, the State filed a "Request for Hearing" with the trial court regarding the admissibility of certain evidence.

{¶ 19} On June 1, 2016, the trial court held an Oral Hearing on Admissibility of Evidence. During the hearing, Appellant argued that, pursuant to his right of confrontation, he should be allowed to present evidence regarding J.J. having a venereal disease and J.J. previously frequenting Rodeway Inn.

{¶ 20} Following the Oral Hearing on Admissibility of Evidence, the trial court excluded any evidence as to J.J. having a venereal disease or any previous visits to the Rodeway Inn pursuant to the "Rape Shield Law" under R.C. § 2907.02(D).

{¶ 21} On June 2, 2016, Appellant's case proceeded to jury trial. During the jury trial, the State presented testimony from eight (8) witnesses, including J.J., and introduced thirty-one (31) exhibits, including Lab Reports confirming the presence of Appellant's sperm and non-sperm DNA on J.J.'s body.

{¶ 22} Appellant did not introduce any exhibits and only presented his own testimony.

{¶ 23} On June 7, 2016, the jury found Appellant guilty of Aiding or Abetting Rape pursuant to R.C. § 2907.02(A)(1)(c) and not guilty on the remaining counts of the indictment.

{¶ 24} Following the verdict, the trial court scheduled a Sentencing Hearing for June 13, 2016.

{¶ 25} On June 13, 2016, the trial court sentenced Appellant to a seven (7) year prison term, imposed five (5) years of mandatory post-release control, and classified Appellant as a Tier III sex offender.

{¶ 26} On July 8, 2016, while represented by appellate counsel, Appellant filed a *pro se* "Motion for New Trial" with the trial court.

{¶ 27} On July 14, 2016, the State filed its "Response to Defendant's Motion for a New Trial" with the trial court.

4

{¶ 28} On July 22, 2016, the trial court overruled Appellant's "Motion for
New Trial."

*State v. Brown*, 2017-Ohio-1114, 2017 WL 1155069, at **1-3 (Ohio Ct. App. Mar. 28, 2017).

## II.     Procedural History

### A.     Trial Court Proceedings

On August 11, 2015, a Richland County, Ohio grand jury indicted Brown on one count of aiding or abetting rape in violation of O.R.C. 2907.02(A)(1)(c)/O.R.C. 2923.03(A)(2); one count of aiding or abetting rape in violation of O.R.C. 2907.02(A)(2)/O.R.C. 2923.03(A)(2); and one count of kidnapping in violation of O.R.C. 2905.01(A)(4).  (Doc. No. 10-1, Ex. 1.)   Brown pled not guilty to all charges.  (Doc. No. 10-1, Ex. 2.)

On April 12, 2016, the State requested a hearing to determine the admissibility of certain evidence regarding the prior sexual activity of the alleged victim.  (Doc. No. 10-1, Ex. 5.)  On June 1, 2016, the trial court held a pre-trial hearing on the application of Ohio's rape shield statute to Brown's proposed evidence.  (Doc. No. 10-1, Ex. 6.)  After the hearing, the trial court determined "no evidence may be presented [at trial] of the victim having venereal disease" and "no evidence may be presented of the victim being on a previous occasion at the hotel where the alleged incident occurred."  (*Id.*)  The trial court stated, "If either side believes evidence on either of these topics has become material to a fact at issue and that its inflammatory or prejudicial nature does not outweigh its probative value, that party may approach the Court out of the hearing of the jury to request to use it."  (*Id.*)

The case proceeded to jury trial on June 2, 2016.  (Doc. No. 11-1, PageID #312.)  On June 7, 2016 the jury returned its verdict, finding Brown guilty of aiding or abetting the impaired consent type of rape but not guilty of aiding or abetting the forcible type of rape, the lesser charge of aiding or abetting sexual battery, and kidnapping.  (Doc. No. 10-1, Ex. 7.)

5

On June 13, 2016, the state trial court held a sentencing hearing.  (Doc. No. 10-1, Ex. 8.)  The trial court sentenced Brown to seven years in prison and a mandatory five years post-release control, classified Brown as a Tier III sex offender, and journalized Brown's sentencing entry on June 15, 2016.  (*Id.*)

**B.    Direct Appeal**

Brown, through counsel, filed a timely notice of appeal to the Fifth District Court of Appeals. (Doc. No. 10-1, Ex. 10.)  On August 24, 2016, Brown filed a motion to supplement the record, which the state appellate court granted.  (Doc. No. 10-1, Ex. 11, 12.)  In his appellate brief, he raised the following issues for review:

> I.    WHETHER THE EXCLUSION OF J.J'S PRIOR TRIP TO THE HOTEL RENDERED BROWN'S JURY TRIAL FUNDAMENTALLY UNFAIR AS TO DENY BROWN OF HIS CONSTITUTIONAL RIGHTS
>
> II.   WHETHER THERE EXISTED SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING OF GUILTY OF AIDING AND ABETTING IMPAIRED RAPE BEYOND A REASONABLE DOUBT

(Doc. No. 10-1, Ex. 13.)  The State filed a brief in response (Doc. No. 10-1, Ex. 14), to which Brown replied.  (Doc. No. 10-1, Ex. 15.)

On March 28, 2017, the state appellate court affirmed Brown's convictions.  (Doc. No. 10-1, Ex. 16.)  *See also State v. Brown*, 2017-Ohio-1114, 2017 WL 1155069, at *6.

On May 10, 2017, Brown, through new counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 10-1, Ex. 17.)  In his Memorandum in Support of Jurisdiction, Brown raised the following Propositions of Law:

> I.    Ohio's Rape Shield statute, R.C. §2907.02(D), must be read in conjunction with a defendant's 6th Amendment right to confrontation and to present a defense. Evidence regarding the witness' prior activities which would be relevant to presenting a defense must be admitted, so long as it does not merely impugn the witness' character by introduction of irrelevant acts pertaining to the witness' prior sexual history.
>
> II.   Ohio Rape Shield statute, R.C. §2907.02(D), prohibits only evidence of the prior *sexual* activity of the alleged victim.

6

(Doc. No. 10-1, Ex. 18.)  The State filed a response in opposition.  (Doc. No. 10-1, Ex. 19.)

On December 20, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 10-1, Ex. 20.)

**C.      Application for Reconsideration under Ohio App. R. 26(A) & 14(B)**

On March 9, 2018, Brown filed a delayed *pro se* application for reconsideration (Doc. No. 10-1, Ex. 21), which the State opposed.  (Doc. No. 10-1, Ex. 23.)  On April 30, 2018, the state appellate court denied Brown's motion as untimely.  (Doc. No. 10-1, Ex. 25.)

Brown did not appeal this decision to the Supreme Court of Ohio.

**D.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On April 23, 2018, Brown filed a delayed *pro se* Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 10-1, Ex. 22.)  Brown's Application raised the following arguments:

> I.      Appellate counsel was ineffective when he failed to raise that while inconsistent responses to different counts of an indictment do not create an inconsistent verdict, where, as here, an inconsistent verdict arises out of inconsistent responses to the same count, then the verdict is fatally flawed and must be reversed.

> II.     Appellate counsel was ineffective when he raised and argued that the conviction for aiding and abetting rape was not supported by sufficient evidence, where appellate counsel failed to identify and raise from the record that there was a total lack of evidence.

(*Id*.)  The State did not file a brief in opposition.

The record does not contain a decision by the state appellate court on Brown's 26(B) Application to Reopen.  (Doc. No. 10-1.)[1]

**E.      Post-Conviction Filings**

On July 8, 2016, Brown filed a motion for a new trial pursuant to O.R.C. §2945.79(D) and Ohio Criminal Rule 45(B)(2).  (Doc. No. 10-1, Ex. 26.)  Brown's motion raised the following assignments of

---

[1] As discussed in detail *infra*, Brown waived his habeas claims concerning ineffective assistance of counsel.  (Doc. No. 15 at 15.)

error:

    I.            The trial court erred and violated Defendant's Constitutional rights when it amended the forcible rape charge and convicted Defendant for an offense that was neither lesser, included, not [sic] charged.

    II.           [T]he trial court's judgment implicates Defendant's Fifth Amendment rights under the Double Jeopardy Clause as well as Defendant's Sixth Amendment rights to Notice of the Charges and the right to a Fair Trial.

(*Id.*)  The State filed a response in opposition.  (Doc. No. 10-1, Ex. 27.)  On July 22, 2016, the trial court overruled Brown's motion for a new trial.  (Doc. No. 10-1, Ex. 28.)

       Brown did not appeal the trial court's July 22, 2016 decision.

       On October 20, 2016, Brown filed an untimely *pro se* motion for a new trial pursuant to Ohio Criminal Rule 33.  (Doc. No. 10-1, Ex. 29.)  In his motion, Brown claimed prosecutorial misconduct based on a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), jury misconduct, and violations of his Fourteenth Amendment due process rights and his Sixth Amendment right to a fair trial.  (*Id.*)  On November 7, 2017, Brown filed a motion for leave to file an amended motion for new trial instanter.  (Doc. No. 10-1, Ex. 30.)  The State filed a response in opposition to Brown's motion for a new trial.  (Doc. No. 10-1, Ex. 31.)

       On November 16, 2016, the trial court overruled Brown's second motion for a new trial because the motion was untimely filed and Brown failed to comply with Ohio Crim.R. 33(A)(2) and (A)(3) procedural filing requirements as he failed to file the required affidavits.  (Doc. No. 10-1, Ex. 32.)

       Brown did not appeal the trial court's November 16, 2016 decision to the state appellate court.

## F.    Federal Habeas Petition

       On December 19, 2018, Brown, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

8

**GROUND ONE**: Violation of Sixth Amendment Right to confront accuser and right to fair trial as a result under the Fifth and Fourteenth Amendments to the U.S. Constitution.

> **Supporting Facts**: Defense counsel was not permitted to inquire about victim's drug and alcohol use at the same Inn on other occasions where offense occurred to impeach her regarding her sobriety and ability to recall facts accurately [sic]. The defense was also not permitted to inquire about the fact that the victim had venerial [sic] disease, that was not given to her by the defendant.

**GROUND TWO**: Violation of Due Process under the 5th & 14th Amend.s [sic] by applying Ohio's Rape Shield law so as to prevent inquiry into non-sexual history, as well as source or presence of venerial [sic] disease.

> **Supporting Facts**: The trial court improperly applied Ohio's Rape-Shield law. The trial court prevented inquiry into the victim's prior presence and non-sexual activities at the Inn where the alleged rape occurred and prevented him from inquiring about her having venerial [sic] disease, that was not given to her by the defendant. Thereby, the defendant was denied his right to a fair trial under the 14th Amendment.

**GROUND THREE**: Violation of 5th and 14th Amendments for due process, as there was insufficient evidence to convict Petitioner of aiding and abetting sexual conduct with a substantially impaired person.

> **Supporting Facts**: The victim testified that she did not see or hear who pushed her back down on a bed, while she was being raped by a co-defendant of Petitioner.

**GROUND FOUR**: Violation of 5th and 14th Amendments for due process, as there was inconsistent verdicts as to one amended count of the indictment.

> **Supporting Facts**: The jury found Petitioner guilty of aiding and abetting rape [sic] a substantially impaired person, but also found him not guilty of sexual battery on the same count.

**GROUND FIVE**: Violation of Due Process under the 5th and 14th Amendments to the U.S. Constitution for failure to disclose *Brady Material*.

> **Supporting Facts**: The prosecution failed to disclose prior to trial that the victim had recanted her story that Petitioner had forcibly raped her. The only indication that the victim had recanted her story was the prosecution filing a bill of particulars stating its intention to convict Petitioner as either a principle offender or as an aider and abetter.

**GROUND SIX**: Violation of Due Process under the 5th and 14th Amendments to the U.S. Constitution for improper amendment of indictment.

> **Supporting Facts**:  Without going through the Grand Jury process, the prosecution amended the indictment six days before trial, one day short of the required seven days required by rule, to include the count of aiding and abetting the rape of a substantially impaired person, which is not a lesser included offense of rape.

(Doc. No. 1.)

On March 19, 2019, Warden Chae Harris ("Respondent") filed a Return of Writ.  (Doc. No. 10.) Brown filed a Traverse on May 9, 2019, in which he waived Grounds Four through Six.  (Doc. No. 15 at 15.)  On May 17, 2019, Respondent filed a Reply to Traverse.  (Doc. No. 16.)

### III. Exhaustion and Procedural Default

**A.      Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with

10

the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286

(1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 407 F. App'x 473, 480 (6th Cir. 2012).

**B.     Application to Petitioner**

**1. Ground Two**

Although Respondent does not specifically argue that Brown's due process claim was procedurally defaulted,[3] a careful review of the record reveals the only constitutional issue Brown presented to the state appellate court and the Supreme Court of Ohio concerned whether the exclusion of evidence concerning the victim's prior visits to the motel and prior alcohol and drug use violated his Sixth Amendment rights to confront his accusers and present a defense.  Brown did not present any claim that his due process rights were violated by exclusion of this evidence to the state courts.[4]

The Court finds Brown's failure to present Ground Two to the state courts resulted in a procedural default.  Therefore, Ground Two is procedurally barred unless Brown "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  A

---

[3] Respondent argued "portions" of Brown's claims in Grounds One and Two were procedurally defaulted, specifically the portions of the claims concerning the victim's venereal disease.  (Doc. No. 10 at 22-25.)
[4] While Brown raised a due process argument in his motion for a new trial pursuant to Crim.R. 33, his due process claim did not concern exclusion of this evidence.  (Doc. No. 10-1, Ex. 29.)  Further, Brown did not appeal the trial court's denial of his motion.

habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a.  Cause and Prejudice

As Respondent did not argue procedural default, Brown did not raise any arguments regarding cause and prejudice.  However, the Court addresses any arguments Brown may have raised with respect to ineffective assistance of counsel.

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016).  However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

While Brown filed a 26(B) application, he did not raise appellate counsel's failure to present a due process violation argument to the state courts as grounds for ineffective assistance of counsel.  (Doc. No. 10-1, Ex. 22.)[5]  The record contains no evidence that there is cause and prejudice to excuse the procedural default of this ineffective assistance of appellate counsel claim.  As a result, ineffective assistance of appellate counsel cannot serve as cause to excuse the procedural default of the due process portion of

---

[5] As noted *supra*, the record does not contain a copy of the state appellate court's decision on Brown's 26(B) application.  If the state appellate court rendered a decision on Brown's application, the record reflects no appeal of the denial of his 26(B) application to the Supreme Court of Ohio, which would be an additional ground for procedural default.

14

Ground Two.  As Brown fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

Here, Brown does not assert he is actually innocent.  (Doc. No. 1; Doc. No. 15.)  Nor does he present any new, reliable evidence of his innocence.  Therefore, the Court finds Brown has failed to demonstrate the procedural default of Ground Two should be excused on the basis of actual innocence.

### 2. Ground Three

While Respondent stated Brown had properly exhausted his sufficiency of the evidence claim in Ground Three and addressed it on the merits (Doc. No. 10 at 31), a careful review of the record reveals Brown failed to present the sufficiency of evidence claim to the Supreme Court of Ohio.  (Doc. No. 10-1, Ex. 18.)

The Court finds Brown's failure to present Ground Three to the Supreme Court of Ohio resulted in a procedural default. Therefore, Ground Three is procedurally barred unless Brown "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a. Cause and Prejudice

As Respondent did not argue procedural default, Brown did not raise any arguments regarding cause and prejudice. However, the Court addresses any arguments Brown may have raised with respect to ineffective assistance of counsel.

While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal." *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)). Here, Brown had no constitutional right to counsel on a discretionary appeal to the Supreme Court of Ohio. *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Thus, any purported failure of his attorney in failing to raise certain issues on appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore*, 708 F.3d at 776; *McFarland*, 356 F.3d at 699; *Smith*, 463 F.3d at 432; *Berry*, 2016 WL 4177174, at *3. However, the

underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards*, 529 U.S. at 453 (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

While Brown filed a 26(B) application, he did not raise appellate counsel's failure to present a sufficiency of the evidence argument to the Supreme Court of Ohio as grounds for ineffective assistance of counsel.  (Doc. No. 10-1, Ex. 22.)[6]  The record contains no evidence that there is cause and prejudice to excuse the procedural default of this ineffective assistance of appellate counsel claim.  As a result, ineffective assistance of appellate counsel cannot serve as cause to excuse the procedural default of Ground Three.  As Brown fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without

---

[6] As noted *supra*, the record does not contain a copy of the state appellate court's decision on Brown's 26(B) application.  If the state appellate court rendered a decision on Brown's application, the record reflects no appeal of the denial of his 26(B) application to the Supreme Court of Ohio, which would be an additional ground for procedural default.

any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

Here, Brown does not assert he is actually innocent.  (Doc. No. 1; Doc. No. 15.)  Nor does he present any new, reliable evidence of his innocence.  Therefore, the Court finds Brown has failed to demonstrate the procedural default of Ground Three should be excused on the basis of actual innocence.

### IV. Review on the Merits

**A.    Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that

18

circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence

in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id*. at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Ground One

In Ground One, Brown asserts his Sixth Amendment right to confront his accuser, as well as his right to a fair trial under the Fifth and Fourteenth Amendments,[7] were violated when defense counsel "was not permitted to inquire about the victim's drug and alcohol use at the same Inn on other occasions where offense occurred to impeach her regarding her sobriety and ability to recall facts accurately."[8]  (Doc. No. 1

---

[7] Brown failed to present the portion of this claim regarding violation of his right to a fair trial under the Fifth and Fourteenth Amendment to the state courts.  While Brown raised a Fifth and Fourteenth Amendment claim in his motion for a new trial pursuant to O.R.C. § 2945.79(D) and Crim.R. 45(B)(2), his claim did not concern exclusion of this evidence.  (Doc. No. 10-1, Ex. 26.)  Furthermore, Brown did not appeal the trial court's denial of his motion.  As Respondent did not argue this portion was procedurally defaulted, Brown made no argument regarding cause and prejudice.  While Brown filed a 26(B) application, he did not raise appellate counsel's failure to present such an argument to the state courts as grounds for ineffective assistance of counsel.  (Doc. No. 10-1, Ex. 22.)  The record contains no evidence that there is cause and prejudice to excuse the procedural default of this ineffective assistance of appellate counsel claim.  Nor does Brown assert he is actually innocent and present new, reliable evidence of such innocence.  Therefore, the Court finds this portion of Ground One to be procedurally defaulted, and the procedural default is unexcused.

[8] Brown also asserted violations of these rights stemming from defense counsel not being permitted to inquire about the victim's venereal disease which was not given to her by the defendant.  Respondent argued Brown failed to present the portions of his argument relating to the victim's venereal disease to the state appellate court and the Supreme Court of Ohio.  (Doc. No. 10 at 22-23.)  As Brown failed to respond to Respondent's arguments about the portion relating to venereal disease or develop his arguments further,

at 6.)  Brown asserts defense counsel sought "to admit the evidence for the purposes of showing voluntary presence at the motel and prior experience with drugs and alcohol, as it related to the State's claim that she was too impaired to give consent."  (Doc. No. 15 at 11.)

Respondent argues the state appellate court's decision "is not contrary to or an unreasonable application of clearly established Supreme Court [sic] pertaining to the Sixth Amendment Confrontation Clause and fundamental fairness."  (Doc. No. 10 at 23.)

The record reflects Brown raised the portion of this claim relating to the victim's prior visits to the motel and prior alcohol and drug use on direct appeal in violation of his Sixth Amendment rights to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 10-1, Ex. 13, 18.)  The state appellate court addressed this claim as follows:

> {¶ 32} In his First Assignment of Error, Appellant argues that the trial court erred in excluding testimony pursuant to R.C. § 2907.02. We disagree.

> {¶ 33} Ohio's Rape Shield Law as codified in R.C. § 2907.02(D) provides:

>> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

> {¶ 34} The "rape shield" law allows testimony on specific instances of a victim's "sexual activity" if the evidence is "material to a fact at issue in this case" and its probative value outweighs its inflammatory or prejudicial nature.

> {¶ 35} Here, Appellant argues that he should have been allowed to present evidence that "J.J. has previously partied at this hotel." (Appellant's brief at 5).

---

it appears Brown no longer wishes to pursue these claims.  (Doc. No. 15 at 10-17.)  Even if he did wish to pursue them further, the Court finds the portion of these claims relating to the victim's venereal disease to be procedurally defaulted.  Brown makes no argument regarding cause and prejudice, nor does he present new, reliable evidence that he is actually innocent, to excuse the default.

{¶ 36} In determining whether "prior acts" evidence should be admitted, the court must balance the interests of the victim, which the statute is designed to protect, and the defendant's right to confront and cross-examine the State's witnesses. *State v. Williams* (1986), 21 Ohio St.3d 33, 35, 487 N.E.2d 560. If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted. *Id.*

{¶ 37} Appellant does not argue that J.J. had previously engaged in sexual conduct with him or his co-defendants at the Rodeway Inn.

{¶ 38} Upon review, we find any evidence as to whether or not J.J. had previously attended parties at the Rodeway Inn had no probative value as to whether, on the night in question, Appellant aided and abetted in her rape or whether she was substantially impaired at the time.

{¶ 39} Based on the foregoing, we find Appellant's First Assignment of Error not well-taken and hereby overrule same.

*State v. Brown*, 2017-Ohio-1114, 2017 WL 1155069, at **3-4.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused, applicable to the States by way of the Fourteenth Amendment, "to be confronted with the witnesses against him." U.S. Const. Amend. VI. As the United States Supreme Court has explained, "the right of confrontation 'means more than being allowed to confront the witness physically.'" *Van Arsdall*, 475 U.S. at 678 (quoting *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). *See also Blackston v. Rapelje*, 780 F.3d 340, 349 (6th Cir. 2015). Rather, "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Id*. at 315–316 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). "In general, challenges to the credibility of witnesses will occur through cross-examination because 'cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Blackston*, 780 F.3d at 349 (quoting *Davis*, 415 U.S. at 316).

However, the Confrontation Clause does not preclude a trial judge from placing limits on cross-examination. *See Van Arsdall*, 475 U.S. at 679 ("It does not follow, of course, that the Confrontation

Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness."). *See also Weissert v. Palmer*, 699 F. App'x 534, 539 (6th Cir. Aug. 15, 2017); *Gerald v. Warden, Ross Correctional Inst.*, No. 1"15-cv-493, 2017 WL 2303672 at * 21 (S.D. Ohio Feb. 27, 2017). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. Indeed, as the Supreme Court has explained, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original). *See also Van Arsdall*, 475 U.S. at 679.

> "In addressing cross-examination under a rape shield statute, the Supreme Court has:
>
>> distinguished between a 'general attack' on the credibility of a witness – in which the cross-examiner 'intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony' – and a more particular attack on credibility 'directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand.'"

*Battiste v. Miller*, Case No. 1:17-cv-128, 2019 WL 6221477, at *20 (N.D. Ohio Jul. 8, 2019) (quoting *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000)) (additional citation omitted), *report and recommendation adopted by* 2019 WL 4385735 (N.D. Ohio Sept. 13, 2019), *certificate of appealability denied by* 2020 WL 1539266 (6th Cir. Jan. 17, 2020).

A violation of the Confrontation Clause does not warrant automatic reversal but, rather is subject to harmless-error analysis. *See Van Arsdall*, 475 U.S. at 681-682; *Blackston*, 780 F.3d at 359; *McCarley v. Kelly*, 801 F.3d 652, 665 (6th Cir. 2015). The Supreme Court recently explained the contours of harmless error analysis, as follows:

The test for whether a federal constitutional error was harmless depends on the procedural posture of the case. On direct appeal, the harmlessness standard is the one prescribed in *Chapman [v. California]*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 [1967]: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, at 24, 87 S.Ct. 824.

In a collateral proceeding, the test is different. For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht [v. Abrahamson]*, 507 U.S. [619], 637, 113 S.Ct. 1710 [1993] (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht, supra*, at 637, 113 S.Ct. 1710 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam).

*Davis v. Ayala*, – U.S. –, 135 S.Ct. 2187, 2198, 192 L.Ed.2d 323 (2015). *See also Blackston*, 780 F.3d at 359 ("In the context of federal habeas corpus, a constitutional error will warrant relief only if the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'"); *McCarley*, 801 F.3d at 665 ("*Brecht* requires a Confrontation Clause violation to have a 'substantial and injurious effect or influence in determining the jury's verdict' before it merits reversal on collateral review.").

As noted above, "a state court decision is not unreasonable if 'fairminded jurists could disagree' on its correctness.'" *Ayala*, 135 S.Ct. at 2199 (quoting *Richter*, 562 U.S. at 101). A habeas petitioner, therefore, must show that "the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

Brown has not shown that the state appellate court's decision to reject his Sixth Amendment claim was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable

24

determination of the facts.  Here, the state appellate court identified the balancing test between the victim's interests, which the rape shield statute is designed to protect, against Brown's Sixth Amendment rights.  "Although Supreme Court precedent does not require states to conduct a case-by-case balancing test to determine whether the competing interests favor exclusion, [*s*]*ee Jackson*, 569 U.S. at 510-11," a state appellate court's application of the balancing test "is consistent with the requirement that state courts ensure the application of rules limiting cross-examination not be arbitrarily applied or 'disproportionate to the ends that … [it is] asserted to promote."  *Battiste*, 2019 WL 6221477, at *22 (additional citations omitted).  The state appellate court, citing *State v. Williams*, 487 N.E.2d 560 (Ohio 1986), stated, "If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted."  *State v. Brown*, 2017-Ohio-1114, 2017 WL 1155069, at *4.  In its application of the law, the state appellate court found the evidence that the victim had previously attended parties at the motel "had no probative value as to whether, on the night in question, Appellant aided and abetted in her rape or whether she was substantially impaired at the time." *Id.*  Brown has not pointed to any decision by the Supreme Court in a case with materially indistinguishable facts that reached a different conclusion, nor has he pointed to clear and convincing evidence that the state appellate court made a clear error of fact.  *Battiste*, 2019 WL 6221477, at *22. Moreover, the state appellate court decision "is consistent with Supreme Court precedent indicating that cross-examination seeking to generally attack a witness's credibility . . . is not protected under the Constitution."  *Id.* (citing *Davis*, 415 U.S. at 316; *Early v. Packer*, 537 U.S. 5, 8 (2002); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 596 (6th Cir. 2012); *Boggs*, 226 F.3d at 736).  Therefore, the state appellate court reasonably rejected Brown's Sixth Amendment argument.

Furthermore, even if a Sixth Amendment violation occurred, any error was harmless.  A review of the trial transcript shows defense counsel elicited testimony on cross-examination that the victim had

drank and used drugs before.  (Doc. No. 11-1, PageID# 583, 605.)  Therefore, Brown cannot show that exclusion of the victim's prior visits to the motel to drink and use drugs had a substantial and injurious effect or influence in determining the jury's verdict.

For all the reasons set forth above, it is recommended that the portion of Ground One that is not procedurally defaulted be DENIED.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED IN PART AND DENIED IN PART

Date: August 3, 2020 _s/ Jonathan Greenberg_
Jonathan D. Greenberg
United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  _See United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**